**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

DUANE C. WHITE,

               Plaintiff,

vs.

WALTER L. KAUTZKY and
JOHN F. AULT,

               Defendants.

No. C02-0088-MWB

**REPORT AND RECOMMENDATION**
**ON THE MERITS**

---

### *TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*   *FINDINGS OF FACT BASED ON THE STIPULATED RECORD* . . . . . . . **3**

*III.*  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

      *A.*    *Constitutional Right of Access to the Courts* . . . . . . . . . . . . . . . . . **13**

      *B.*    *White's Right of Access to the Courts Claim* . . . . . . . . . . . . . . . . . **17**

*IV.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

### *I. INTRODUCTION*

The plaintiff Duane C. White ("White") was convicted in 1999, on Iowa state drug charges. On June 12, 2002, while an inmate at the Anamosa State Penitentiary ("ASP"), White commenced this 42 U.S.C. § 1983 action against Walter L. Kautzky, former Director of the Iowa Department of Corrections, and John F. Ault, Warden of ASP.

White asserted several claims, including a claim that the defendants denied him access to the courts in violation of his rights under the First and Fourteenth Amendments to the United States Constitution. *See* Doc. Nos. 1 & 4, To support this claim, White alleged the defendants did not provide him with the legal resources necessary for him to determine whether he should, or should not, challenge his drug conviction, and this denied him his constitutionally guaranteed right to have access to the courts. The defendants denied this allegation, contending ASP fulfilled its obligation to provide inmates with access to the courts by arranging to have "contract attorneys" available to inmates to provide legal advice and assistance.

The defendants filed a motion for summary judgment asking the court to dismiss all of White's claims. *See* Doc. No. 26. On March 21, 2003, the undersigned filed a report and a recommendation that the defendants' motion for summary judgment be granted. *Id.* On July 3, 2003, Chief Judge Mark W. Bennett issued an order accepting in part and rejecting in part the report and recommendation, leaving White's "access to the courts" claim for trial. *See White v. Kautzky*, 269 F. Supp. 2d 1054 (N.D. Iowa 2003); Doc. No. 36. Judge Bennett summarized this claim as follows:

> White's individual claim is based on the alleged failure of the "contract attorneys" to assist him with research to determine whether or not he has a viable claim for post-conviction relief. As the potential basis for post-conviction relief, White contends that Iowa officials violated Iowa's version of the Uniform Criminal Extradition Act in transferring him back and forth between Iowa and South Dakota before he pleaded guilty to charges in Iowa. White contends that the extradition violations may have deprived Iowa courts of jurisdiction to convict him. White contends that he needed advice or research as to the merits of his claim -- that is, he could not risk simply filing for post-conviction relief -- because, pursuant to the terms of his plea agreement, filing a meritless

> post-conviction relief application would have allowed the
> prosecutor to reinstate additional charges bearing substantial
> additional penalties.

*White*, 269 F. Supp. 2d at 1056.

The parties subsequently agreed to submit the matter to the court based on a stipulated record. Doc. No. 40. On June 25, 2004, the parties submitted a joint appendix containing a stipulated record. Doc. No. 47 (referred to herein as "S.R."). On July 8, 2004, the parties filed their trial briefs. Doc. Nos. 48 & 49. On July 15, 2004, the defendants filed a response to White's trial brief. Doc. No. 50. White filed an "Affidavit of Statement of Facts" on August 5, 2004. Doc. No. 51. By order dated October 27, 2004, this matter was referred to the undersigned for the issuance of a report and recommendation on the merits. Doc. No. 53.

Finding the case to be fully submitted and ready for decision, the undersigned turns now to consider the merits of White's access-to-the-courts claim.

## II. FINDINGS OF FACT BASED ON STIPULATED RECORD

Before 1998, the Iowa Department of Corrections ("IDOC") maintained a prison law library at ASP. In 1998, the defendant Walter L. Kautzky directed that the prison library no longer be updated or maintained. S.R., p. 6. In October 2000, he set up a system under which "contract attorneys" were hired to provide legal advice and assistance to inmates. S.R., pp. 6, 111. This was accomplished by having the State Public Defender's Office enter into contracts with attorneys who agreed to provide specific legal

services to inmates in specific areas of the law.  S.R., pp. 27-28, 111.[1]  Under the terms of the contract, for example, a contract attorney was required to confer with an inmate who sought legal advice about, or who wished to file pleadings seeking, postconviction relief; interview the inmate to ascertain relevant facts; advise the inmate about the merit or lack of merit of any proposed litigation; advise the inmate regarding the proper forms; and assist the inmate in completing the appropriate forms.  *See* S.R., pp. 27-28.  The contract did not specifically require an attorney to perform legal research.  *See* S.R., pp. 27-28, 83, 113.

---

[1]Article III of the contract states:

1.   Attorney will assist offenders in the correctional facility listed above who seek legal advice or wish to file pleadings in the following areas:
a) Notices of appeal in criminal cases;
b) Petitions for post-conviction relief;
c) Petitions for habeas corpus;
d) Complaints pursuant to 42 U.S.C. § 1983;
e) Challenges of restitution under Iowa Code § 910.7;
f) Requests for appointment of counsel, where appropriate;
g) Other pleadings and motions concerning the offender's criminal case or conditions of confinement.

Attorney is not required to provide services to any inmate seeking services in any area of the law not specified above.
. . .
3.   Attorney will:
a) Confer with individual offenders about the legal matters listed above;
b) Interview offenders to ascertain relevant facts;
c) Advise the offender about the merits or lack of merit of any proposed litigation and the proper parties thereto;
d) Advise the offender about alternatives to litigation;
e) Advise the offender regarding the proper forms, pleadings, or motions for the proposed litigation;
f) Advise the offender about the prerequisites to filing;
g) Assist the offender in completing the appropriate forms regardless of the merit or lack of merit to the offender's proposed litigation;
h) Accept correspondence from offenders concerning the above;
i) Be appointed as guardian ad litem for offenders with no living will or durable power of attorney for health care decisions.

On June 25, 1999, White was arrested in Iowa on state drug charges and was taken to the Woodbury County Jail. S.R., pp. 32-33.[2] On June 26, 1999, White made an initial appearance in Iowa state court, and a public defender was appointed to represent him. S.R., pp. 34, 36. At the time of his arrest in Iowa, there was an outstanding warrant for White's arrest from South Dakota on drug charges. S.R., pp. 33, 35, 59. White was taken to South Dakota on July 12, 1999, to face the South Dakota charges. S.R., pp. 35, 37, 42. White did not speak with his attorney or an Iowa judge before being taken to South Dakota, and he did not agree to waive extradition proceedings. S.R., pp. 36-37. White appeared in a South Dakota court for an initial appearance and arraignment, and attorney Mick Scarmon was appointed to represent him. S.R., pp. 37-38, 44. That same day, White was returned to the Woodbury County Jail in Sioux City, Iowa, again without any extradition paperwork or proceedings. S.R., p. 44.

On October 20, 1999, White again was transported from the Woodbury County Jail to South Dakota. *Id.* On or about November 17, 1999, White was transported back to Iowa. *Id.* White did not have any type of hearing or a chance to object before either of these transfers. *Id.*

White ultimately pled guilty to criminal charges arising out of Iowa and South Dakota. S.R., pp. 46-47. In Iowa, White pled guilty to two charges of possession with intent to deliver controlled substances, and he was sentenced to two terms of twenty-five years, to be served concurrently. S.R., pp. 5-6, 46-47, 60, 62. In South Dakota, White also pled guilty to two charges, and he was sentenced to a term of twenty years and a term of ten years. S.R., pp. 46-47, 63. Under the plea agreement, the Iowa and South Dakota

---

[2] *See also State v. White*, FECR048798 (Woodbury County Dist. Ct. 1999); *State v. White*, FECR048475 (Woodbury Dist. Ct. 1999). Iowa state court criminal and civil records may be accessed at the following address: www.judicial.state.ia.us/online_records/.

sentences were to be served concurrently. S.R., pp. 46, 61, 63. Another term of the plea agreement provided that the Iowa Attorney General was free to reinstate and prosecute several dismissed charges if White filed an application for postconviction relief. S.R., p. 47. If convicted on those charges, White faced a possible 150 years of incarceration. S.R., pp. 47, 60. White did not file a direct appeal from his Iowa conviction. S.R., pp. 47-48.

On December 16, 1999, White was committed to the Iowa Department of Corrections. S.R., p. 26. After an initial assignment to the Iowa Medical and Classification Center in Oakdale, Iowa, White was transferred to ASP on January 11, 2000. S.R., pp. 26, 48.

While at ASP, White began exploring whether to file a postconviction relief action challenging the jurisdiction of the Iowa court after he was transferred back and forth from Iowa to South Dakota. White determined that the law library at ASP was inadequate for researching this issue, so he submitted a request to see the contract attorney. S.R., pp. 7, 53, 66. At the time he submitted his request, one of the contract attorneys for ASP was John J. Wolfe. S.R., pp. 53, 66–68, 81-82. White met with Wolfe and asked him for advice on whether to file a postconviction relief action challenging his conviction based on issues relating to extradition and jurisdiction. S.R., pp. 67-72, 76, 98-99. According to White, Wolfe listened to White's discussion of these issues, provided him with a form for commencing a postconviction relief action, and told him to fill it out and file it. White never told Wolfe about his plea agreement, or that he possibly would face additional charges and penalties if he filed a postconviction relief action. S.R., pp. 69-71, 89-93, 99-100.

Wolfe testified that he did not specifically recall consulting with White, but he remembered consulting with a prisoner who had been arrested in Woodbury County,

Iowa, and had been transferred back and forth from South Dakota without extradition proceedings. Wolfe did not recall the advice he gave to the prisoner, but he believed he would have told the prisoner to file a postconviction relief action raising the issue, and then to ask the attorney appointed to represent the prisoner in the postconviction relief action to explore the merits of the claim. S.R., pp. 20-22, 67-70, 87-93, 116-117.

White later met and discussed his case with Douglas Kurtz, a fellow prisoner and a legal assistant, at ASP law library. S.R., pp. 49, 107. Kurtz informed White of a problem with the computation of the credit White was receiving for time served, and Kurtz also indicated White's transfers between Iowa and South Dakota raised extradition concerns which could be raised in a postconviction relief action. S.R., pp. 49, 116. However, when White told Kurtz about the plea agreement and the potential adverse consequences from filing a postconviction relief action, Kurtz told White "not to do something stupid." S.R., pp. 50, 69, 114-115. Kurtz also told White "not to put anything in until you research this and find out if you're doing the right thing." S.R., p. 73.

White attempted to research his postconviction claims, but he had little success. Kurtz could not assist White because it would have violated prison rules. S.R., pp. 51, 110, 112. White spent time in the law library, which was no longer updated, and the resources available in the library were inadequate to research the issues in his case. S.R., pp. 51-53, 72, 111.

On March 28, 2002, White filed a grievance. S.R., pp. 13-14, 58. In the grievance, White described his problem as follows:

> I need access to an adequate and up to date law library and
> assistance from a fellow prisoner in the preparation of my
> post-conviction relief action. The issues I need to research
> are complex and intricate regarding due process and

extradition, respectively, which encompass jurisdictional points. I have attempted to get assistance from the contract attorney but he informed me that he could not help me with the issues in my case. I have also complained to my counselor . . . about being denied the capability of researching my post-conviction issues -- being denied the capability of receiving the assistance I need to file the necessary paper work and consequently being denied my right to access the courts regarding my post-conviction. The law library is inadequate and out of date which is preventing me from [performing] legal research on the issues, and the rule which prevents me from obtaining assistance from another prisoner [who] can assist me in the preparation of the necessary paper work and legal research is denying me the capability of accessing the court.

S.R., pp. 13-14. White requested the following action:

I am requesting that the law library be updated and the rule changed to allow fellow prisoner assistance so that my right to access the courts can be preserved and honored. Due to the flagrant violation of my right of access to the courts, I am requesting damages in the amount of $25,000.00

*Id.*

On April 10, 2002, a grievance officer responded to White's grievance, stating as follows:

I have reviewed and investigated your grievance. . . . C.S. II Curt Mayo informs me, "Policy prohibits assistance from other inmates. We allowed it in the past. We don't now. It's that simple. Mr. White is still able to ask questions of other inmates, they just can't do the work for him nor can they have his legal work in their possession. He has access to the contract attorney. This is Mr. Kautzky's initiative. I am sure it was thoroughly studied by qualified individuals prior to inception." ASP Associate Warden–Treatment Steve Hebron States, "ASP Policy INS-IR-5 . . . specifically States

8

the role of the contract attorney. . . . Currently, there is not any legal obligation to provide anything (including an on-site legal library) for inmates except the contract attorney, who has certain limitations in his role. The option of hiring one's own attorney can be pursued." ASP Administrative Assistant Sheryl Perrin informs me, "Legal services provided to inmates by the contract attorney are made possible through an agreement between the Iowa Department of Corrections and the Office of the State Public Defender. Any revisions in the agreement would have to be made by the Director of Corrections. Mr. White may submit his suggestion in writing to Michael Savala who is the Contract Administrator for the DOC." Based upon information you have provided as well as information contained above, your [request for inmate legal assistance] is not allowed per policy. There is not any intent to change this policy. The courts require a contract attorney or a law library. IDOC has opted for the contract attorney approach. The responsibilities of the contract attorney do not fall under the authority of ASP administrative responsibility, and thus, cannot be granted by the ASP grievance officer. Your complaints, allegations, and suggestions should be submitted to the IDOC Contract Administrator, Michael Savala, or the Contract Administrator for the Public Defender, Mark Smith. Your request for "damages in the amount of $25,000.00" will not be granted.

S.R., pp. 15-16.

On April 15, 2002, White appealed the grievance officer's decision, stating as follows:

I am appealing the denial of my grievance concerning the inadequate law library and refusal to allow for fellow prisoner assistance. By your refusal to provide an adequate law library and assistance from fellow prisoners I am being effectively denied the ability and capability of accessing the court concerning my post-conviction. The so-called contract attorney can not help me and has told me he will not help me

> with the legal research, factual investigation or the
> preparation of the necessary paper work that needs to be done.
> You are aware of the fact that your current legal assistant
> program is not only denying me access to the courts, but that
> your program is interfering and denying others access to the
> courts as well. It is your responsibility to insure adequate,
> effective, and meaningful access to the courts and [you] are
> under a constitutional mandate not to interfere with this right
> of access to the courts. You are responsible to negotiate your
> own contracts -- you know the deficiencies in this program
> and they need to be corrected. Again, I am requesting that
> the law library be up-dated and the policy changed to allow
> for fellow prisoner assistance and the damages requested in
> my grievance.

S.R., pp. 17-18.

On April 18, 2002, defendant John F. Ault denied White's appeal. In his
response, defendant John F. Ault wrote:

> I concur with the findings of Grievance Officer William
> Soupene and deny your grievance appeal. The contract
> attorney is here per an agreement between the Iowa
> Department of Corrections and the State Public Defender's
> Office and I do not have the authority to change it.

S.R., p. 19.

On April 24, 2002, White appealed defendant John F. Ault's decision, stating as
follows:

> This is an appeal from the denial of my grievance and
> grievance appeal here at the Anamosa State Penitentiary for
> the denial of my right to access the courts due to an
> inadequate law library, denial of fellow prisoner assistance,
> and the denial of an adequate, effective, and meaningful
> alternative in providing me the capability of preparing my
> application for post-conviction relief in State court.

The law library at Anamosa State Penitentiary is out of date and recently all the federal reporters and law books were made inaccessible and [this prevents] me from conducting the necessary legal research on the issues in my case, which concern jurisdiction, the Uniform Extradition Act, the Interstate Agreement on Detainers Act, etc. Due to the institutional and department policy, I am prevented from obtaining fellow prisoner assistance to assist me with my legal and factual investigations into the issues in my case, as I am untrained in the law and in need of assistance to conduct proper research on the issues in my case. I have [spoken] with the contract attorney, so-called, and he informed me that it sounds like I have meritorious issues, but he cannot help me with the legal research or the factual investigations that need to be done in my case in order to prepare my application for post-conviction relief. Accordingly, he informed me that he could not even help me, period.

With the denial of fellow prisoner assistance and the tools necessary (an adequate law library) I am being denied my right of access to the courts by operation of policy that flagrantly interferes and abridges my right of meaningful, effective, and adequate access to the courts in this State, both State and Federal. Furthermore, the statute of limitations is currently running out on my ability to file which presents an issue of immediate importance and urgency.

I am requesting that the institution and the department change their rule and policy to allow fellow prisoner assistance as well as allocating funds from our telephone rebate fund money to up-date and keep current the law library here at the institution as we as a collective body of prisoners have a protected property interest in those funds and they should be used [to provide] an adequate law library to the prisoner population. There are other prisoner benefit funds that can also be used for this purpose and I request that these moneys also be used. The contract attorney is currently. . . paid by our funds and I am requesting that this contract be terminated

> as a waste of our money and constitutes a denial of our property without due process of law, in that we as a prisoner body have not been given an opportunity to be heard on how this money is being spent. In addition, this so-called contract does [not] provide the prisoner population with an adequate, effective, or meaningful capability in exercising my right, or our rights as a collective, to access the courts as mandated by the U.S. Supreme Court. I am also requesting damages in the amount of $25,000.00 for the flagrant violation of my rights in accessing the court. The violation of my rights to access the courts, as well as others, has been known by the institution and the department, Mr. Kautzky, and Mr. Ault, yet there has been no attempt whatsoever to change or attempt to ameliorate the damage -- it has been a total disregard of my rights of access to the courts.

S.R., pp. 20-22. On June 3, 2002, an executive officer from the central grievance office denied White's appeal. S.R., p. 23. On June 12, 2002, White filed the instant action.

White remained at ASP until he was paroled to a detainer in South Dakota on July 25, 2002. S.R., pp. 26, 32, 57. The statute of limitations for filing a postconviction relief action in Iowa expired in October of 2002. S.R., p. 8.[3] White knew he had three years to file a postconviction relief application in Iowa, because Kurtz

---

[3] Judgment was entered against White on November 23, 1999. *See State v. White*, FECR048798 (Woodbury County Dist. Ct. 1999); *State v. White*, FECR048475 (Woodbury Dist. Ct. 1999). Under Iowa law, appeals in criminal cases must be taken within thirty days of the date judgment becomes final. *See* Iowa R. App. P. 6.101; *State v. Braun*, 460 N.W.2d 454, 455 (Iowa 1990); *State v. Raim*, 381 N.W.2d 635, 636 n.1 (Iowa 1986). In the event an appeal is timely filed, the date procedendo issues determines when a conviction is final under Iowa law. *See* Iowa Code § 822.3. White did not file a direct appeal. Thus, despite the parties' agreement to the contrary (*see* S.R., p. 8), it appears White had until November 23, 2002, rather than October 2002, to file an application for postconviction relief.

had informed him of that fact.  S.R., pp. 20-22, 54.  Nevertheless, White never filed a postconviction relief action in Iowa.  S.R., pp. 58-59, 71-72.[4]

## IV.  LEGAL ANALYSIS

### A.  Constitutional Right of Access to the Courts

Inmates undeniably enjoy a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494-95, 52 L. Ed. 2d 72 (1977), but that right is not unlimited; it assures only "meaningful access to the courts." *Bounds*, 430 U.S. at 823-24, 97 S. Ct. at 1495-96.  With respect to what constitutes "meaningful access to the courts," the Supreme Court has held:

> [T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

*Bounds*, 430 U.S. at 828, 97 S. Ct. at 1498.  *See also Lewis v. Casey*, 518 U.S. 343, 346, 116 S. Ct. 2174, 2177, 135 L. Ed. 2d 606 (1996) (reaffirming *Bounds*); *Cody v. Weber*, 256 F.3d 764, 767-68 (8th Cir. 2001) (discussing standard for access to the courts claim).

The Supreme Court subsequently clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right.  *See Lewis*, 518 U.S. at 343, 116 S. Ct. at 2174.  *See also Cody*, 256 F.3d at 768 ("*Lewis* explains and narrows the Supreme Court's earlier holding in

---

[4]In Iowa, to be granted postconviction relief, an inmate must provide to the state court an application identifying all facts and grounds for relief.  *See* Iowa Code §§ 822.3, 822.4.  A postconviction applicant's right to counsel is governed by Iowa Code section 822.5.  There is no statutory authority to appoint counsel to research issues related to the inmate's criminal conviction prior to filing for postconviction relief.

[*Bounds*] concerning the nature of the right and the requirements for relief."). In *Lewis*, the Supreme Court explained that *Bounds* did not create an independent right to the establishment of or access to a law library or a legal assistance program. *Lewis*, 518 U.S. at 350, 116 S. Ct. at 2179. All the right of access to the courts guarantees is the right to have some form of assistance so as to be able to present any "non-frivolous" claim to a court. *Lewis*, 518 U.S. at 350-53, 116 S. Ct. at 2179-81.

> In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."

*Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180 (quoting *Bounds*, 430 U.S. at 825, 97 S. Ct. at 1496).

Moreover, the Supreme Court made it clear that

> [b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," . . . and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

*Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180 (internal citations omitted).

Thus, to prevail on a right of access to the courts claim, an inmate must do more than show that the prison law library or legal assistance program is inadequate. *Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180. Indeed, an inmate must assert that he suffered an actual injury to pending or contemplated legal claims. *Lewis*, 518 U.S. at 351-53, 116

S. Ct. at 2180-81. *See also Christopher v. Harbury*, 536 U.S. 403, 413-16, 122 S. Ct. 2179, 2186-87, 153 L. Ed. 2d 413 (2002) (reiterating actual or imminent injury requirement); *Bear v. Kautzky*, 305 F.3d 802, 806 (8th Cir. 2002) (relying on *Lewis* in reaffirming actual injury requirement); *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (same, citing *Klinger v. Dep't of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997)).

Concerning the actual injury requirement, the Supreme Court gave two examples of what might violate the constitutional standard. First, it is sufficient to show that, due to deficiencies in the prison's legal assistance program, an action brought by an inmate was dismissed because he was unable to comply with some technical requirement. *Lewis*, 518 U.S. at 351, 116 S. Ct. at 2180. Second, it is sufficient to show that an inmate was unable to bring an action in court at all because he was stymied by inadequacies in the prison access scheme. *Id.*; *see also Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) ("Alleging theoretical inadequacies is insufficient.").

With respect to the various methods by which prisons can assure access to the courts, the Supreme Court did not recommend one particular method over another. *See Lewis*, 518 U.S. at 352, 116 S. Ct. at 2180; *Bear*, 305 F.3d at 806. Rather, the Supreme Court encouraged local experimentation, suggesting, for example, that libraries might be replaced

> with some minimal access to legal advice and a system of court-provided forms such as those that contained the original complaints in two of the more significant inmate-initiated cases in recent years . . . forms that asked the inmates to provide only the facts and not to attempt any legal analysis.

*Lewis*, 518 U.S. at 352, 116 S. Ct. at 2180 (internal citations omitted). *See also Bear*, 305 F.3d at 806 (experimentation "with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices [is

permissible] so long as there is no actual harm to the access rights of particular inmates"); *Sabers v. Delano*, 100 F.3d 82 (8th Cir. 1996) (if State provides inmate with "contract attorney to assist with legal matters," there is no right to a law library). The Supreme Court envisioned such a program would remain in place "until some inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 352-53, 116 S. Ct. at 2181.

Although it did not recommend a particular method to assure access to the courts, the Supreme Court specifically disclaimed any requirement that prison officials ensure inmates have sufficient resources to "discover grievances" or to "ligate effectively" once their claims are brought before the court. *Lewis*, 518 U.S. at 354-55, 116 S. Ct. at 2181-82; *accord Cody*, 256 F.3d at 768. As an explanation for disclaiming several statements in *Bounds* that suggested a "State must enable [a] prisoner to *discover* grievances and to *litigate effectively* once in court," the *Lewis* Court held:

> To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires.

*Lewis*, 518 U.S. at 354, 116 S. Ct. at 2181 (emphasis in original). Thus, the goal is a more limited one than actually providing legal counsel to represent any inmate who wishes the services of an attorney for any claim he wishes to file.

Finally, the Supreme Court observed that the right of access to the courts does not extend to all types of legal claims or proceedings. An inmate must show an actual injury in the pursuit of specific types of non-frivolous cases; that is, direct or collateral attacks on sentences and challenges to conditions of confinement. *Lewis*, 518 U.S. at 354-55, 116 S. Ct. at 2181-82; *accord Cody*, 256 F.3d at 768. *See also Sabers*, 100 F.3d at 84

(right of access to the courts is limited to attacks on an inmate's "efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights"). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355, 116 S. Ct. at 2182 (emphasis in original).

## B. White's Right of Access to the Courts Claim

In *White v. Kautzky*, 269 F. Supp. 2d 1054 (N.D. Iowa 2003), Judge Bennett explained that to succeed on an access-to-the-courts claim, a plaintiff must meet two requirements. First, the plaintiff "must show that he was denied a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 1060 (citations, internal quotation marks omitted). Second, a plaintiff must show "actual injury" resulting from the frustration or impediment of a non-frivolous legal claim. *Id.* (citations omitted).

Analyzing the first requirement, Judge Bennett held, in pertinent part, as follows:

> [H]ad the contract attorneys provided White with the services required under the contract with the Iowa Department of Corrections, White's "access to the courts" claim would almost undoubtedly fail on this first requirement. The contract provides, *inter alia*, that the contract attorneys "will assist offenders in the correctional facility . . . who seek legal advice or wish to file pleadings in the following areas: . . . Petitions for post-conviction relief. . . ." (*See* Defendants' Appendix, Doc. No. 17, p. 30, ¶ 1). The contract also provides that the contract attorneys "will confer with individual offenders about the legal matters listed above and advise the offender about the merits or lack of merit of any proposed litigation and the proper parties thereto. . . ." *Id.* at ¶ 2. Had these services been provided, White would have received the advice that he asserts was essential to his

determination of whether or not to file an application for post-conviction relief.

This is not to say that White can satisfy the first requirement of his "access to the courts" claim simply by showing a breach of the duties imposed upon the contract attorneys by their contract. However, what White has done is generate genuine issues of material fact as to whether the conduct of the contract attorneys in this case, which White avers consisted of simply handing him an application for post-conviction relief without even attempting to provide him with any advice concerning the merits of his claim, *when he had no other source of information to assess the merits of his claim,* constituted providing "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" [Citation omitted.] Because the "touchstone" of White's "access to the courts" claim is whether he was provided with "'meaningful access to the courts,'" [citation omitted], not just some access to the courts, handing an inmate an application for post-conviction relief, standing alone, does not appear to be nearly enough. [Footnote omitted.]

*Id.* at 1061-62 (emphasis in original).

In his analysis as to whether White suffered an actual injury, Judge Bennett held, in pertinent part, as follows:

[T]he record evidence is sufficient to generate issues of material fact that White "had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by the inaction of the contract attorneys that he was unable even to file a complaint" for post-conviction relief before the statute of limitations ran. [Citation omitted.] Again, White has pointed to evidence in the record that he had no source of information other than the contract attorneys to assess the merits of his potential claim for post-conviction relief, because the law library was no longer kept up to date, such that he could not research the question on his own, nor

did ASP allow him to consult with any "jailhouse lawyers."
Because filing a meritless post-conviction relief application
carried with it potentially dire consequences, in terms of
reinstatement of charges carrying substantial additional prison
sentences, White contends -- and the court finds that he has
generated genuine issues of material fact the he was --
effectively "so stymied" that he could not even file a
complaint, even though he knew post-conviction relief
proceedings were theoretically available, apparently knew
what the deadline was for filing a post-conviction relief
application, and was handed a form application for post-
conviction relief.

*Id.* at 1063.

The court finds the Iowa Department of Corrections established a constitutionally
permissible means of providing inmates with access to the courts by developing and
implementing the contract attorney system. *Id.* at 1061-62 ("[H]ad the contract attorneys
provided White with the services required under the contract with the Iowa Department
of Corrections, White's 'access to the courts' claim would almost undoubtedly fail.").
The question here is whether Kautzky or Ault nevertheless denied White "a reasonably
adequate opportunity to present claimed violations of fundamental constitutional rights
to the courts." *Id.* at 1060. For two reasons, the court finds they did not.

First, White was not denied access to the court by any failure of the contract
attorney system implemented at ASP. At the summary judgment stage of this case, the
court was presented with a factual scenario where a prisoner asked for advice on whether
to file a postconviction relief action, and was simply given a form and told to file the
action. As pointed out by Judge Bennett, this would not have satisfied the requirements
of the contract, which required contract attorneys to give legal advice to prisoners who
were considering filing postconviction relief actions. This was especially true here,

where White was facing potentially severe consequences because the filing of an application for postconviction relief would violate the terms of his plea agreement.

Now that the record has been fully developed, however, it is apparent that White never told the contract attorney about the plea agreement or about the potentially adverse consequences from filing a postconviction relief action. The contract attorney simply was told there were extradition issues that might raise a question about the jurisdiction of the Iowa district court over White at the time he was convicted on the Iowa drug charges. Although it would have been more helpful to White if the contract attorney had researched the extradition issues in the case and given more detailed advice to White on the merits of such a claim, the court cannot hold that White was denied access to the courts because of these possible shortcomings. This is particularly true where the contract attorney knew of no adverse consequences from the filing of a postconviction relief action.[5]

Secondly, apart from developing and implementing the contract attorney system at ASP, Kautsky and Ault did nothing to prevent White from presenting his postconviction relief claims to the Iowa courts. As Judge Bennett pointed out, if the contract attorney had performed properly under the terms of the contract, White would almost certainly have no viable access to the courts claim. *White*, 269 F. Supp. 2d at 1061-62. Therefore, any failure of legal representation which resulted in a denial of access to the courts was a violation of the terms of the contract, and would have been a failure by Wolfe, the contract attorney, and not by the defendants named in this action. Kautsky and Ault could only be liable for the actions of Wolfe through the application

---

[5] The situation potentially would have been very different if the contract attorney had been told of the potential increased sentence White could face under the plea agreement if he filed a postconviction relief action. In fact, Wolfe testified that had he known of this potential adverse consequence, he would have given White different advice. S.R., pp. 89-93. The court finds the other adverse consequences cited by White (*e.g.*, his desire not to waste the filing fee on an action that was not meritorious) are not momentous enough to result in a denial of access to the court.

of the doctrine of *respondeat superior*, which does not apply in section 1983 cases. *See Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989) (liability under 42 U.S.C. § 1983 may not be grounded upon a *respondeat superior* theory); *Oklahoma City v. Tuttle*, 471 U.S. 808, 810, 105 S. Ct. 2427, 2429, 85 L. Ed. 2d 791 (1985) (same); *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691-95, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978) (same); *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (same); *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994) (same); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993) (same); *Bolin v. Black*, 875 F.2d 1343, 1347 (8th Cir. 1989) (same). A person cannot be held liable for another's act simply because he or she has supervisory authority over one who deprived a plaintiff of a constitutional right. *Id.*

Finally, White is unable to prevail on his claim because he has failed to identify any actual injury. *See Lewis*, 518 U.S. at 351-53, 116 S. Ct. at 2180-81.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED**, unless any party files objections[6] to the report and recommendation in accordance with 28 U.S.C.

---

[6] The parties must specify the parts of the report and recommendation to which objections are made. In addition, the parties must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990).

§ 636(b)(1)(C) and Fed. R. Civ. P. 72(b) within ten (10) days of the service of a copy of this report and recommendation, that judgment be entered in favor of the defendants and against White.

**IT IS SO ORDERED.**

**DATED** this 25th day of April, 2005.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT